UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PRIMARY CARE PHARMACY, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:17-CV-795 RLW |
| EXPRESS SCRIPTS, INC., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Express Scripts, Inc.'s Motion to Compel (ECF No. 30), Defendant Express Scripts, Inc.'s Motion to Deem its Requests for Admission Admitted (ECF No. 33), and Plaintiff Primary Care's Motion for Protective Order (ECF No. 46).

## BACKGROUND

In its Verified Complaint and Jury Demand (ECF No. 1, hereinafter "Complaint"), Plaintiff Primary Care Pharmacy, LLC ("Primary Care") seeks damages because Defendant Express Scripts, Inc. ("Express Scripts") "improperly recoup[ed] from Primary Care $520,042.83 attributable to diabetic testing strips and diabetic testing supplies, which Primary Care had purchased and distributed to Express Scripts' members and beneficiaries." (Complaint, ¶1).[1]

Express Scripts is a Pharmacy Benefit Manager ("PBM"). PBMs are third-party contractors that administer the prescription drug benefit plans of insurance carriers and Medicare Part D plan sponsors. (Complaint, ¶¶12, 15). PBMs contract with a network of retail, mail order, and specialty pharmacies, such as Primary Care, to provide and dispense covered prescription services to members. (Complaint, ¶17). Primary Care entered into a contract with

---

[1] Defendant Express Scripts Holding Company, Inc. was voluntarily dismissed on May 30, 2017. (ECF Nos. 19, 20).

Express Scripts, which consisted of a Pharmacy Provider Agreement ("Agreement") and a Network Provider Manual ("Provider Manual").

Express Scripts conducted an audit of Primary Care beginning on March 23, 2016 to validate that Primary Care purchased the products for which it had billed Express Scripts. (Complaint, ¶21). Primary Care provided Express Scripts with numerous invoices pertaining to Primary Care's purchase of various products, including documentation related to diabetic testing strips and diabetic testing supplies. (Complaint, ¶22). Express Scripts also requested numbers and proof of product origination for billed OneTouch and Freestyle products, two brands of diabetic testing strips and testing supplies. (Complaint, ¶23). Express Scripts claimed to have identified purchase shortages for multiple drugs, which resulted in a discrepancy of $520,042.83. (Complaint, ¶24). Express Scripts then "recouped" this amount from Primary Care, but Express Scripts' members and beneficiaries allegedly retained the corresponding diabetic strips and testing supplies. (*Id.*) Primary Care learned that Express Scripts would not accept the purchases made by Primary Care from wholesalers where Primary Care did not provide pedigree[2] information to validate its purchases. (Complaint, ¶25). Primary Care asserts that Express Scripts' full recoupment of $520,042.83 was not warranted based on Primary Care's ability to provide documentation to validate its purchases of diabetic testing strips and testing supplies from several wholesalers in compliance with the contracts that governed the parties' relationship.

---

[2] The U.S. Food and Drug Administration defines drug pedigree as a statement of origin that identifies each prior sale, purchase, or trade of a drug, including the date of those transactions and the names and address of all parties to them. Primary Care contends that there is no pedigree requirement for diabetic testing strips or testing supplies because they are non-drugs. (Complaint, ¶25, n.3).

Primary Care brings this case for Breach of Contract (Count One), Unjust Enrichment (Count Two), and Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Three).

On June 2, 2017, Express Scripts filed its First Amended Answer and Affirmative Defenses to Plaintiffs' Complaint and Counterclaim. (ECF No. 21). In its Counterclaim, Express Scripts seeks to recover amounts owed to Express Scripts by Primary Care as a result of Primary Care's "contractual breaches and unjust enrichment." (ECF No. 21 at 11, ¶1). Express Scripts seeks "reimbursement for claims paid to Primary Care that were subsequently reversed by Primary Care and for amount Express Scripts, Inc. is entitled to recover due to discrepancies identified in a field audit." (ECF No. 21 at 11, ¶2) Express Scripts brings claims for Breach of Contract (Count I) and Unjust Enrichment (Count II). Express Scripts claims that "Primary Care breached the Agreement by submitting invalid claims to Express Scripts, Inc. which Express Scripts, Inc. paid, and by not refunding the amounts paid by Express Scripts, Inc. after Primary Care reversed the invalid claims." (ECF No. 21 at 21, ¶59).

## **LEGAL STANDARD**

Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery. *See* Fed. R. Civ. P. 37 (a)(1) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."). Likewise, Rule 26 governs the scope of discovery in federal matters:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1).

"A party may move for an order protecting disclosure or discovery, which is granted only upon a showing of good cause." *Heller v. HRB Tax Grp., Inc.*, 287 F.R.D. 483, 485 (E.D. Mo. 2012) (citing Fed.R.Civ.P. 26(c)). The party moving for the protective order has the burden to demonstrate good cause for issuance of the order. *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999). "Because of liberal discovery and the potential for abuse, the federal rules 'confer[ ] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required.'" *Id.* at 925 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). *Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09CV01252 ERW, 2018 WL 2762266, at *1 (E.D. Mo. June 8, 2018).

## **DISCUSSION**

### A. Motion for Protective Order (ECF No. 46).

Although the Motion for Protective Order was the last filed, the Court starts its discussion with this Motion because it most clearly and efficiently disposes of the discovery issues in dispute. As noted by Express Scripts, Primary Care's Motion for Protective Order "reargues the issues already briefed to the Court in Express Scripts' pending motions to compel discovery." (ECF No. 50 at 1). The Court hereby issues a global decision regarding these issues from which the parties can extrapolate the impact on the pending Motion to Compel and Motion to Deem its Requests for Admission Admitted.

Here, Primary Care seeks a protective order from the Court (1) precluding Express Scripts from referencing *U.S. v. Hanafy*, 302 F. Supp. 2d 1016 (N.D. Tex. 2000) and *U.S. v.*

*Hanafy*, 302 F.3d 485 (5th Cir. 2002) and pursuing additional written or deposition discovery pertaining to these cases, (2) precluding written or deposition discovery pertaining to Primary Care's marketing efforts and business strategies, and (3) precluding written or deposition discovery pertaining to Primary Care's business relationship with Distinguished Pharmacy.

Express Scripts argues that these three areas of inquiry are relevant to their purported defense that Primary Care did not comply with the Provider Agreement. (ECF No. 50 at 2). Express Scripts claims that it raised this defense in paragraph 9 of its Affirmative Defenses where it claimed that Primary Care's "claims are barred, in whole or in part, because [Primary Care] previously engaged in fraudulent conduct in its submission of claims for prescription drugs or supplies to Express Scripts, Inc." (Amended Answer, ECF No. 21, Affirmative Defenses, ¶9).

Express Scripts, however, never raised this defense of fraudulent conduct previously. In fact, the parties engaged in pre-litigation contractual dispute resolution procedures[3] where this defense was never raised by Express Scripts. Likewise, Express Scripts did not mention this allegedly fraudulent conduct as part of its Counterclaims against Primary Care. Indeed, the Court holds that these three areas of inquiry are irrelevant to both Primary Care's claims and Express Scripts' Counterclaims. *See Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)) ("Although the federal rules permit liberal discovery, it 'is [to be] provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes.'"). The Court finds that discovery regarding these issues would largely detract from the central issues at hand and lead the Court to mini-trials regarding these issues while not

---

[3] The Court does not decide whether these contractual dispute resolution procedures were binding on the parties. Rather, the Court finds that Express Scripts' failure to raise these issues at that time provides evidentiary support for the Court's determination that these side issues now raised by Express Scripts during discovery are not central to the litigation.

making any progress in resolving the true crux of this dispute. The Court, therefore, grants Primary Care's Motion for Protective Order. Primary Care has demonstrated good cause for the protective order so that the litigants and the Court are not detracted from the dispute at issue by irrelevant and extraneous points of departure.

### B. Motion to Compel (ECF No. 30) and Motion to Deem Its Requests for Admission Admitted (ECF No. 33)

In its Motion to Compel (ECF No. 30), Express Scripts asks the Court to compel Primary Care to (1) withdraw all boilerplate objections to Express Scripts' First Set of Requests for Production to Primary Care, (2) provide substantive responses to Requests Numbers 6, 7, 10, 11, 18-22, 24-31, 33, and 37-39, and supplement its conditional responses and withdraw its "subject to" and "without waiving objections to Requests Numbers 2-4, 8, 9, 12-17, 23, 32, 34-36." In its Motion to Deem Its Requests for Admission Admitted (ECF No. 33), Defendant Express Scripts asks this Court for an Order deeming Express Scripts' First Set of Requests for Admission Numbers 3, 5-18, 19-20, 23-48, and 49-50 admitted.

As previously stated by Express Scripts, the Motion for Protective Order largely "reargued" the Motion to Compel and the Motion to Deem Its Requests for Admission Admitted. Therefore, the Court denies these Motions and orders the parties to meet and confer regarding these Motions and resolve their disputes based upon the Court's ruling.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Primary Care's Motion for Protective Order (ECF No. 46) is **GRANTED**.

**IT IS HEREBY ORDERED** that Defendant Express Scripts, Inc.'s Motion to Compel (ECF No. 30) and Defendant Express Scripts, Inc.'s Motion to Deem its Requests for Admission Admitted (ECF No. 33) are **DENIED**, without prejudice. The Court **ORDERS** the parties to

revisit these issues, meet and confer, and follow the guidance outlined by the Court in this Order to resolve their discovery disputes.

Dated this 17th day of July, 2018.

/s/ Ronnie L. White
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE