UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PRIMARY CARE PHARMACY, LLC, | ) |
| | ) |
| Plaintiff, | ) No. 4:17-CV-795 RLW |
| | ) |
| v. | ) |
| | ) |
| EXPRESS SCRIPTS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Primary Care's Motion for Summary Judgment (ECF No. 83) and Defendant Express Scripts, Inc.'s Motion for Partial Summary Judgment (ECF No. 85). These matters are fully briefed and ready for disposition.

## BACKGROUND

Express Scripts is a pharmacy benefit manager ("PBM") that contracts with third-party payors and health plan administrators—such as insurers, HMOs, and employers—to facilitate the delivery of prescription drugs to members of health plans and their beneficiaries. Express Scripts maintains a network of retail pharmacies that agree to fill prescriptions for health plan members in accordance with the provisions set forth in Express Scripts' retail pharmacy contracts. Primary Care Pharmacy, LLC ("Primary Care") was a member of this retail network beginning in December 2014. Primary Care and Express Scripts' relationship was governed by an agreement consisting of a Provider Agreement and a Provider Manual (collectively, the "Contract"). Under the Contract, Primary Care would purchase pharmaceutical supplies and then bill Express Scripts for the supplies Primary Care purchased and provided to members of Express Scripts' client health plans.

Express Scripts determined through purchase verification that it paid Primary Care a total amount of $520,042.83 (the "Total Discrepancy Amount") for claims that Primary Care's supplier data did not substantiate. For the majority of the Total Discrepancy Amount ($328,035.66), Primary Care's suppliers provided no supporting documentation. For the remaining portion ($192,007.17), Express Scripts found that Primary Care did not have sufficient records, and the records provided by Primary Care's suppliers suggested that Primary Care made purchases from gray market[1] suppliers who were not authorized by the manufacturer to distribute the product. Express Scripts claims Primary Care was unable to provide basic origination information and lot numbers (hereinafter, "pedigree information") substantiating these product purchases when Express Scripts requested it.

On May 11, 2016, Express Scripts requested pedigree information for certain purchases to ensure the products could be traced back to their manufacturers. Express Scripts received no response to this letter. On May 26, 2016, Express Scripts sent a letter explaining the Total Discrepancy Amount, affording Primary Care the opportunity to contest it, and notifying Primary Care that Express Scripts would recoup the discrepancy amount pursuant to its rights under the Contract if Primary Care did not dispute the amount. On June 29, 2016, Primary Care responded through counsel that Express Scripts should have credited the materials received from the allegedly authorized suppliers for the minority portion of the Total Discrepancy Amount and attaching various documents. On July 15 and July 18, 2016, Express Scripts replied to Primary Care's letter, stated that the Total Discrepancy Amount stood, and recouped the amount. Express Scripts exercised its right to terminate the Contract, effective August 12, 2016.

---

[1] A "gray market" is defined as "a market employing irregular but not illegal methods." https://www.merriam-webster.com/dictionary/gray%20market (last visited September 27, 2019).

Primary Care brought this action seeking payment from Express Scripts for an amount it alleges is due under the Contract with Express Scripts. Primary Care brought claims for Breach of Contract (Count One), Unjust Enrichment (Count Two), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Three). (Complaint, ECF No. 1).

Express Scripts filed a Counterclaim, seeking to recover amounts "due to discrepancies identified in a field audit." (ECF No. 21, Counterclaim, ¶2). Express Scripts brought claims for Breach of Contract (Count I) and Unjust Enrichment (Count II). (ECF No. 21, Counterclaim).

## DISCUSSION

### I. SUMMARY JUDGMENT

#### A. Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e);

*Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### A. Primary Care's Motion for Summary Judgment (ECF No. 83) and Defendant Express Scripts, Inc.'s Motion for Partial Summary Judgment (ECF No. 85)

#### 1. Primary Care's Claim for Breach of Contract

To state a claim for breach of contract under Missouri law, Primary Care "must establish the existence of a valid contract, the rights of plaintiff and obligations of defendant under the contract, a breach by defendant, and damages resulting from the breach." *Gillis v. Principia Corp.*, 832 F.3d 865, 871 (8th Cir. 2016) (citing *Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 5 (Mo. Ct. App. 2013)).

Express Scripts asserts it is entitled to summary judgment on Primary Care's Breach of Contract claim because Primary Care cannot establish its own performance under the Contract or any breach by Express Scripts. Express Scripts argues that Primary Care did not perform the following obligations under the Contract: (1) failed to maintain required records; (2) contacted Express Scripts' clients' members without Express Scripts' consent; (3) failed to operate as a retail

- 4 -

pharmacy as required; (4) falsely represented that it purchased from authorized and reputable suppliers; and (5) billed improper claims to Express Scripts in violation of the Contract.

Express Scripts further claims that Primary Care cannot establish any breach of the Contract by Express Scripts. Express Scripts maintains it had the contractual right to initiate and conduct the Purchase Verification, as well as the right to exercise its "sole discretion" to recoup the Total Discrepancy Amount. For the majority—$328,035.66—of the Total Discrepancy Amount, neither Primary Care nor its suppliers provided any supporting documentation. Because Primary Care failed to provide any documentation to substantiate that amount, Express Scripts asserts it was entitled to exercise its discretion to reverse and recoup that amount. For the remainder of the Total Discrepancy Amount attributable to claims for products purchased from unauthorized suppliers—$192,07.17—Express Scripts also claims it acted under its rights under the Contract. Thus, Express Scripts claims that it properly exercised its "sole discretion" to recoup amounts paid to it and Primary Care cannot show any breach by Express Scripts in exercising its rights.[2]

---

[2] Express Scripts invokes the sham affidavit doctrine to claim that the Court should not consider Primary Care's corporate representative Cindy Hanson's affidavit in order to find an issue of fact related to the amount at issue. *See City of St. Joseph, Mo. v. Sw. Bell Tel.*, 439 F.3d 468, 475–76 (8th Cir. 2006) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). Indeed, Primary Care's 30(b)(6) representative, Ms. Hanson, admitted she had no basis to dispute the truth and accuracy of the Final Discrepancy Report, which resulted in a $520,042.83 recoupment. (ECF No. 89-1; ECF No. 105 at 15). Ms. Hanson's Rule 30(b)(6) deposition notice included topics regarding the Purchase Verification and whether Primary Care had returned any monies to Express Scripts. (ECF No. 105 at 23). The Court agrees that Primary Care cannot utilize the affidavit of Ms. Hanson to contradict her prior testimony that Express Scripts' calculations were undisputed. As a result, the Court will disregard Ms. Hanson's affidavit and the attached charts, which lack foundation. Therefore, the Court finds that Express Scripts' calculations regarding the Purchase Verification amounts have not been refuted by Primary Care.

The Court holds that Primary Care has not established that it performed under the Contract. Primary Care has not provided any evidence of its performance. Instead, Primary Care states it was not required to provide pedigree information for non-drug products such as diabetic supplies and Express Scripts is barred by contractual dispute resolution procedures from raising Primary Care's breeches. (ECF No. 99 at 10-13). Primary Care argues that the "industry wide definition of the term pedigree ... categorically excludes non-drug products such as diabetic testing supplies." (ECF No. 99 at 11). The Court finds as a matter of law that Primary Care was required to maintain and provide pedigree information to Express Scripts pursuant to the Contract. The Contract mandated Primary Care provide Express Scripts with "any and all information and documents requested related to a Covered Service," including "[w]holesaler and supplier invoices, proof of invoices, proof of invoice payment, and pedigrees." (ECF No. 89, ¶11). Thus, the Court holds that the term "pedigree" is not ambiguous, and the Court need not look to outside sources for a determination of whether "pedigree" includes such items. *Deal v. Consumer Programs, Inc.*, 470 F.3d 1225, 1230 (8th Cir. 2006) (internal citations omitted) ("When a contract uses plain and unequivocal language, it must be enforced as written."); *Union Elec. Co. v. Chicago Bridge & Iron Co.*, No. 4:14 CV 31 RWS, 2015 WL 1262941, at *3 (E.D. Mo. Mar. 19, 2015), *order clarified*, No. 4:14 CV 31 RWS, 2015 WL 2193809 (E.D. Mo. May 11, 2015) (same). Since the Contract clearly defines that the pedigree information must be provided for any "Covered Service" and "Covered Service" includes items such as testing supplies, the Court finds no ambiguity and that Primary Care breached the Contract by failing to provide pedigree information for testing supplies.[3] The Court holds that the Contract clearly provides that diabetic

---

[3] In fact, Primary Care's representative for its 30(b)(6) deposition, Ms. Hanson, agreed that Primary Care was required under the Contract to maintain pedigree information for the products it was sending to Express Scripts members, but it failed to do so. (ECF No. 105 at 9-10).

testing strips are within the purview of items for which Express Scripts can request pedigree information. Primary Care's failure to provide such documentation was a breach of the Contract and precludes entry of summary judgment in Primary Care's favor.

Likewise, the Contract nor the case law support Primary Care's position that Express Scripts is barred from raising certain arguments about Primary Care's contractual nonperformance. Primary Care argues that a provision in the Contract that requires certain dispute resolution efforts precludes Express Scripts from raising nonperformance here. The contractual dispute resolution provision required Primary Care to "notify [Express Scripts] of its Claim including sufficient detail to permit [Express Scripts] to respond." Once Primary Care notified Express Scripts of its claim, both parties were to meet and confer. Primary Care now argues that Express Scripts is not permitted to rely on any arguments, other than those raised during the meet and confer process. However, nothing in the Contract requires Express Scripts to come forward at the meet and confer with every argument and defense that Express Scripts could use during litigation. Therefore, the Court holds that Express Scripts is not barred from raising other defenses outside the dispute resolution procedure.

Regarding several breaches, Primary Care further argues that Express Scripts "still cannot meet its burden on a motion for summary judgment based upon these breaches because they raise a genuine dispute of material fact" in that "the determination as to whether a breach is material is a question of fact." (ECF No. 99 at 12). Express Scripts, however, is not required to show the materiality of Primary Care's breaches. Rather, it is Primary Care's burden to show that it performed. *Pepsi Midamerica v. Harris*, 232 S.W.3d 648, 654 (Mo. Ct. App. 2007) (citing *Brockman v. Soltysiak*, 49 S.W.3d 740, 745 (Mo. Ct. App. 2001) ("in order to recover on a claim of breach of contract, a party ... must show their own substantial compliance with the terms of the

contract"). The Court holds that Primary Care has not shown it performed its obligations under the Contract and Express Scripts has shown it performed in accordance with the Contract. Therefore, Primary Care failed to meet its burden for its breach of contract claim and the Court denies Primary Care's Motion for Summary Judgment and grants Express Scripts' Motion for Summary Judgment on this basis.

### 2. Primary Care's Claim for Unjust Enrichment

In Missouri, to plead a cause of action for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred by a plaintiff on a defendant; (2) the defendant's appreciation of the fact of the benefit; and (3) the acceptance and retention of the benefit by the defendant under the circumstances in which retention without payment would be inequitable." *Doug Volz v. Provider Plus, Inc., Jeff Serafin*, No. 4:15CV0256 TCM, 2015 WL 3621113, at *3 (E.D. Mo. June 9, 2015) (citing *Rental Co., LLC v. Carter Group, Inc.*, 399 S.W.3d 63, 67 (Mo. Ct App. 2013)).

Unjust enrichment is "an equitable remedy based on the concept of a quasi-contract," *Reyner v. Crawford*, 334 S.W.3d 168, 174 (Mo. Ct. App. 2011), and a plaintiff may not "recover under both an express contract and unjust enrichment," *Chem Gro of Houghton, Inc. v. Lewis Cnty. Rural Elec. Coop. Ass'n*, No. 2:11CV93 JCH, 2012 WL 1025001, at *3 (E.D. Mo. Mar. 26, 2012) (unpublished) (citing *Banner Iron Works, Inc. v. Amax Zinc Co.*, 621 F.2d 883, 889 (8th Cir.1980)); *Dubinsky v. Mermart, LLC*, 2009 WL 1011503 *5 (E.D. Mo. Apr. 15, 2009) (plaintiffs could not bring alternative unjust enrichment claim when that claim explicitly requested relief based on breach of contract); *see also Affordable Communities of Mo. v. Fed. Nat'l Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013) (finding district court had not erred in dismissing unjust enrichment claim after first finding that resolution of case depended on interpretation of express contract); *32nd Street Surgery Ctr., LLC v. Right Choice Managed Care*, 820 F.3d 950, 955–56

(8th Cir. 2016). Rather, if a "plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract." *Howard v. Turnbull,* 316 S.W.3d 431, 436 (Mo. Ct. App. 2010).

The Court holds that the resolution of this case depends on the district court's interpretation of the Contract and, therefore, equitable relief is unavailable. *Affordable Communities of Missouri v. Fed. Nat. Mortg. Ass'n,* 714 F.3d 1069, 1077 (8th Cir. 2013). Because this case is governed by the Contract Primary Care had with Express Scripts, the Court holds that Primary Care's unjust enrichment claim fails as a matter of law. *32nd St. Surgery Ctr., LLC v. Right Choice Managed Care,* 820 F.3d 950, 955–56 (8th Cir. 2016)(citing *Lowe v. Hill,* 430 S.W.3d 346, 349 (Mo.Ct.App.2014) ("Missouri law does not allow a plaintiff to maintain an action for either of these quasi-contract remedies when an express contract governs the subject matter for which recovery is sought."); *Burrus v. HBE Corp.,* 211 S.W.3d 613, 619 (Mo. Ct. App. 2006) (since plaintiff's relationship with defendant was governed by an enforceable contract, his sole avenue of recovery must also lie on that contract).

In addition, Primary Care only cites to paragraphs 4, 5, and 9 of its statement of uncontroverted material facts to supports its claim that it conferred a benefit onto Express Scripts. *See* ECF No. 86 at 10-11; ECF No. 88, ¶¶4, 5, 9.[4] However, as previously discussed, these "facts"

---

[4] Primary Care cites the following statements of uncontroverted material facts in support of its unjust enrichment claim:
> 4. On or about March 23, 2026, Express Scripts investigated Primary Care to validate that Primary Care purchased the products for which it billed Express Scripts.
> 5. In investigating Primary Care, Express Scripts requested a summary of all purchases and returns or credits for the period beginning November 18, 2014 through February 1, 2016.

do not demonstrate that Express Scripts received a benefit from Primary Care. The fact that Express Scripts identified purchase shortages for a total discrepancy of $520,042.83 from Primary Care and recouped a corresponding amount does not show that Express Scripts retained any "benefit." Instead, it may suggest that Primary Care did not provide Express Scripts' members the supplies that it billed to Express Scripts. Primary Care has not provided undisputed evidence that it provided products to Express Scripts' members and, therefore, Primary Care is not entitled to summary judgment on this claim. The Court denies Primary Care's Motion for Summary Judgment on its unjust enrichment claim and Express Scripts is entitled to summary judgment on this claim.

### 3. Primary Care's Claim for Implied Covenant of Good Faith and Fair Dealing

"'Missouri law implies a covenant of good faith and fair dealing in every contract.'" *O'Shaughnessy v. Cypress Media, L.L.C.*, 208 F. Supp. 3d 1064, 1072 (W.D. Mo. 2016) (quoting *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo. Ct. App. 2000)). "A party breaches the covenant of good faith and fair dealing if it exercises a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the agreement and denies [the other party] the expected benefit of the agreement." *Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. Ct. App. 2012); *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, 808 F.3d 747, 751–52 (8th Cir. 2015). Conversely, "[a]n implied covenant will not ... be imposed where the parties expressly address the matter at issue in their contract." *State v. Nationwide Life Ins. Co.*, 340 S.W.3d 161, 194 (Mo. Ct. App. 2011); *Berringer v. JPMorgan Chase Bank, N.A.*, 16 F.

---

9. Following its investigation, Express Scripts identified purchase shortages of twelve (12) diabetic testing supplies resulting in a total discrepancy of $520,042.83 and recouped the same from Primary Care.
See ECF No. 86 at 10-11; ECF No. 88, ¶¶4, 5, 9 (citations omitted).

Supp. 3d 1044, 1048 (E.D. Mo. 2014). The plaintiff "bears the burden of providing substantial evidence to show bad faith" on the defendant's part. *Koger*, 28 S.W.3d at 412.

Primary Care argues that "Express Scripts was not permitted to recoup in the manner in which it did in this case under the terms of the Parties' contract. . . ." (ECF No. 99 at 14-15). However, Primary Care fails to support this claim with any admissible evidence or argument supported by law.

As previously discussed, Express Scripts demonstrates that the express terms of the Contract govern and permit the actions taken by Express Scripts. *See* SUMF, ¶11 (Primary Care agreed to provide Express Scripts with "any and all information and documents requested relating to a Covered Service," including "[w]holesaler and supplier invoices, proof of invoice payment, and pedigrees."). Because Express Scripts' actions were permitted under the Contract, the Court grants Express Scripts' motion for summary judgment on Primary Care's claim for breach of the implied covenant of good faith and fair dealing as a matter of law. Therefore, the Court grants Express Scripts' motion for summary judgment on Primary Care's claim for breach of the implied covenant of good faith and fair dealing and denies Primary Care's request for summary judgment on this claim.

### 4. Express Scripts' Counterclaim for Breach of Contract and Unjust Enrichment

Express Scripts argues it is entitled to $135,601.32 on its breach of contract claim against Primary Care. (ECF No. 87 at 23-24). The $135,601.32 consists of the Remaining Audit Discrepancy ($6,454.10) and the Unrecovered Reversals Amount ($140,378.17), offset by the amount Express Scripts recovered through escheatment ($11,230.95). Express Scripts claims Primary Care breached the Contract by submitting invalid claims to Express Scripts, which

Express Scripts paid, and by not refunding the amounts paid by Express Scripts after Primary Care reversed the invalid claims.

Regarding the Remaining Audit Discrepancy, Express Scripts asserts it conducted its routine audit and identified the Audit Discrepancy of $12,225.39. Express Scripts states it considered Primary Care's appeal and upheld the Audit Discrepancy under its purported Contract rights. Express Scripts then recovered a portion of the Audit Discrepancy but has not recovered the remaining portion. Express Scripts argues that Primary Care is in breach of the Contract by failing to repay this Remaining Audit Discrepancy in the amount of $6,454.10. Likewise, as for the Unrecovered Reversals Amount, Primary Care admits it submitted reversals for hundreds of claims to Express Scripts, totaling $140,378.17. Express Scripts argues Primary Care breached its obligations under the Contract by failing to repay Express Scripts for the Unrecovered Reversals Amount. Thus, adding together the Remaining Audit Discrepancy ($6,454.10) plus the Remaining Audit Discrepancy (140,378.17), minus the $11,230.95 for escheatment, Express Scripts is owed a total of $135,601.32 from Primary Care.

Primary Care maintains it has provided "irrefutable proof that it returned $94,016.53 to Express Scripts" in the form of pharmacy reversals. (ECF No. 99 at 15 (citing Primary Care's SUMF, ¶¶35-37)). Express Scripts states that Primary Care is not entitled to Summary Judgment because the evidence offered by Primary Care with respect to those reversals is inadmissible and disputed. (ECF No. 105 at 15-16). Primary Care purports to support this argument with Statements of Uncontroverted Material Fact based upon Cindy Hanson's affidavit. Ms. Hanson, however, previously stated that she was unable to testify regarding which claims were recouped by Express Scripts. In her affidavit, Ms. Hanson now claims she can discern the amount of the claims reversals that are at issue. As previously discussed, the Court cannot allow Ms. Hanson to

change her prior deposition testimony in order to defeat Express Scripts' summary judgment motion. *See* footnote 2; *City of St. Joseph, Mo.*, 439 F.3d at 475–76. Therefore, the Court holds that Primary Care cannot employ Ms. Hanson's affidavit to create an issue of fact regarding any funds that were allegedly recouped by Express Scripts. Without Ms. Hanson's affidavit, Express Scripts' calculations regarding the Remaining Audit Discrepancy are undisputed. The Court grants Express Scripts' motion for summary judgment on its Breach of Contract counterclaim and denies Primary Care's Motion for Summary Judgment on Express Scripts' Counterclaims.[5]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Primary Care's Motion for Summary Judgment (ECF No. 83) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Express Scripts, Inc.'s Motion for Partial Summary Judgment (ECF No. 85) is **GRANTED**.

**IT IS FINALLY ORDERED** that the Request for Oral Argument on Express Scripts' Motion for Partial Summary Judgment (ECF No. 94) and the Joint Motion for Hearing Regarding Motions for Partial Summary Judgment (ECF No. 118) are **DENIED** as moot.

Dated this 30th day of September, 2019.

_____
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE

---

[5] Likewise, the Court denies Primary Care's Motion for Summary Judgment on Express Scripts' Counterclaim for Unjust Enrichment is denied because Primary Care's argument is based upon the unsupported and contradictory affidavit of Ms. Hanson. *See* ECF No. 86 at 11-12.